This is a child custody modification case.
Moses Jones, a neurosurgeon in Tuscaloosa, Alabama, was married to Zaida Jones for 10 years prior to their divorce. Two minor children were born during the marriage, and the 1987 divorce judgment awarded custody of those minor children to Zaida Jones. The divorce judgment, however, stated that should Zaida Jones decide to move outside the State of Alabama, then the court would consider that there had been a material change of circumstances, and, therefore, that the custody issue would be reviewable. In 1989, Zaida petitioned the court for permission to move the children to Puerto Rico, where she is from. Moses Jones cross-petitioned, requesting custody of the children. Following an ore tenus hearing, the trial court, in an 18-page opinion, awarded custody to the father. The Court of Civil Appeals reversed, 620 So.2d 1, and we granted Moses Jones's petition for the writ of certiorari. We reverse the judgment of the Court of Civil Appeals.
In Ex parte McLendon, 455 So.2d 863 (Ala. 1984), this Court set forth the standard of review for cases involving the question of a change of custody. We stated:
 "A natural parent has a prima facie right to the custody of his or her child. However, this presumption does not apply after a voluntary forfeiture of custody or a prior decree removing custody from the natural parent and awarding it to a non-parent. Ex parte Mathews, 428 So.2d 58
(Ala. 1983); Ex parte Berryhill, 410 So.2d 416
(Ala. 1982); Horton v. Gilmer, 266 Ala. 124, 94 So.2d 393 (1957); Lewis v. Douglass, 440 So.2d 1073
(Ala.Civ.App. 1983).
 "In returning custody to the mother, the trial court may have incorrectly given the mother the benefit of this presumption. The trial court apparently misconstrued our holding in Ex parte Berryhill, supra, wherein this Court said that in a contest between a natural parent and a non-parent for custody of a child, the natural parent has a superior right to custody. The Court of Civil Appeals correctly noted that the holding of Berryhill has no application when there is a prior decree removing custody from the parent. The superior right of the mother in this case was cut off by the prior decree awarding custody to the grandparents. McLendon v. McLendon, 455 So.2d at 862.
"The correct standard in this case is:
 " 'Where a parent has transferred to another [whether it be a non-parent or the other parent], the custody of h[er] infant child by fair agreement, which has been acted upon by such other person to the manifest interest and welfare of the child, the parent will not be permitted to reclaim the custody of the child, unless [s]he can show that a *Page 6 
change of the custody will materially promote h[er] child's welfare.'
 "Greene v. Greene, 249 Ala. 155, 157, 30 So.2d 444, 445 (1947), quoting the Supreme Court of Virginia, Stringfellow v. Somerville, 95 Va. 701, 29 S.E. 685, 687, 40 L.R.A. 623 (1898).
"Furthermore,
 " '[This] is a rule of repose, allowing the child, whose welfare is paramount, the valuable benefit of stability and the right to put down into its environment those roots necessary for the child's healthy growth into adolescence and adulthood. The doctrine requires that the party seeking modification prove to the court's satisfaction that material changes affecting the child's welfare since the most recent decree demonstrate that custody should be disturbed to promote the child's best interests. The positive good brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child. Frequent disruptions are to be condemned.'
 "Wood v. Wood, 333 So.2d 826, 828
(Ala.Civ.App. 1976).
 "It is not enough that the parent show that she has remarried, reformed her lifestyle, and improved her financial position. Carter v. Harbin, 279 Ala. 237, 184 So.2d 145 (1966); Abel v. Hadder, 404 So.2d 64 (Ala.Civ.App. 1981). The parent seeking the custody change must show not only that she is fit, but also that the change of custody 'materially promotes' the child's best interest and welfare.
 "For several years now, the Court of Civil Appeals has stated that the parent seeking custody has the burden of showing a change in circumstances which adversely affect the welfare of the child. Lewis v. Douglass, 440 So.2d 1073
(Ala.Civ.App. 1983); Simpson v. Gibson, 420 So.2d 782
(Ala.Civ.App. 1982); Taylor v. Taylor, 387 So.2d 849 (Ala.Civ.App. 1980); Keith v. Keith, 380 So.2d 889 (Ala.Civ.App. 1980). This Court, in 1975, expressly rejected that standard in favor of the standard applied today. We held that 'the use of the word "adversely" limits the law as stated in our cases.' Ford v. Ford, 293 Ala. 743, 310 So.2d 234 (1975). We reaffirm that holding today and further hold that all contrary decisions, including the above-cited ones, are overruled to this extent.
". . . .
 ". . . Although the best interests of the child are paramount, this is not the standard to be applied in this case. It is important that she show that the child's interests are promoted by the change, i.e., that she produce evidence to overcome the 'inherently disruptive effect caused by uprooting the child.' Wood v. Wood, 333 So.2d at 828."
455 So.2d at 865-66.
In an 18-page opinion, the trial judge determined that custody should be awarded to the father. He stated in that opinion, in pertinent part:
 "This is the most difficult child custody modification case this Judge has ever faced. The heart persuades one way, but the law, the evidence, and the best interests of the children compel a contrary result. There is no doubt that both Plaintiff and Defendant love these children very much. Indeed, they have been at war over them (and over other matters of conflict as well — see below) since the filing of the Bill of Complaint herein on April 29, 1986. Defendant now comes before the Court seeking permission to remove the children to Puerto Rico, her native country and the home of her mother. Ordinarily such a pleading would be unnecessary. However, Judge Conger in his order of March 11, 1988, (p. 1 of findings, page 2 of order) stated:
 " 'However, the Plaintiff has had a significant relationship with his children and it is important to their well-being and best interest for him to continue to be regularly involved with them during their growth and development.';
 "and, in his original decree herein, dated June 22, 1987, Judge Conger, in p. 7 of *Page 7 
the Order provisions of said decree (page 4), ordered as follows:
 " 'The Court has made the custody determination herein on the basis that this is the "home state" of the children. Their roots are here and the advantages of the lifestyle they enjoy such as school, friends, medical treatment and standing in the community are all of great benefit to their long-term welfare and personal growth. The Court wishes to make it clear that all considerations regarding the best interests of the children as to their care and custody included all of the above as well as the various strengths and weaknesses of each parent. Any move to relocate the children outside of Alabama, given the totality of the Court's consideration regarding custody, would be a significant change in circumstances that would be grounds for custodial review if brought to the Court's attention.' "
The trial court, reviewing Judge Conger's order, stated:
 "The Court in this case had the benefit of the testimony, and the test results and interpretations, of perhaps two of the best clinical psychologists in this part of the State, Dr. Cathy Brumback, for Defendant, and Dr. Harriet Myers, for Plaintiff. Their testimony, viewed in light of the testimony and demeanor of the parties themselves and of the history of conflict and controversy in this case since 1986, lies at the heart of the trial of this case. Their testing and findings, and the professional opinions and conclusions drawn therefrom and from their interviews with and observations of the various parties hereto, are the basis of the findings of the Court contained in paragraphs 7. through 10. hereinbelow;
". . . .
 "The Defendant's demeanor, appearance, and testimony were very disturbing to the Court. She testified that she has been unable to 'pick up the pieces' of her life since the divorce. She professes an undue amount of misunderstanding of the provisions of the various decrees of the Court in this case, given her high degree of education and intelligence. She says she is unable to get on with her life. In her testimony, Defendant evidenced unnatural paranoias and suspicions. . ..
 "Despite her obvious need for psychological counseling, and Dr. Brumback's suggestion that she seek same, she has declined to do so. In the opinion of the Court, a material change in circumstance has occurred in Defendant's home and life in that she has become more and more withdrawn, and dependent and centered on her children and her relationship with them. Paranoia, indecision, and confusion were apparent in her testimony and demeanor in this Courtroom."
When reviewing a custody case wherein the evidence was presented ore tenus, an appellate court will not disturb the findings of the trial judge unless they are found to be unsupported by the evidence and therefore plainly wrong.Skinner v. Hargett, 494 So.2d 652, 653 (Ala.Civ.App. 1986), citing Cook v. Cook, 462 So.2d 370 (Ala.Civ.App. 1984). In this case, the Court of Civil Appeals, in our opinion, did not observe this standard of review. It is not enough that the Court of Civil Appeals would or could have reached the opposite conclusion; rather, the Court of Civil Appeals is bound to look at the evidence to determine if the trial judge was plainly and palpably wrong, in light of the standards set forth in Ex parteMcLendon, supra. In light of McLendon, we conclude that the Court of Civil Appeals erred in reversing the judgment of the trial judge.
The record indicates that two psychologists testified. One testified that a change of custody would be "devastating" to the children; however, the other psychologist, Dr. Meyer, testified that although the change in custody would be traumatic for the minor children, she thought the best interests of the children would be better served if they were in the custody of their father. The trial judge found that, in light of the testimony and the demeanor of the parties, a change in custody would best promote the children's welfare and that the benefits of that change would outweigh the *Page 8 
effect the change of custody would have on the children. SeeEx parte McLendon, supra.
For the foregoing reasons, the judgment of the Court of Civil Appeals is reversed and the cause is remanded with instructions to reinstate the judgment of the trial court.
REVERSED AND REMANDED.
MADDOX, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
KENNEDY and INGRAM, JJ., dissent.