CRAWLEY, Judge.
Tamata McGhee (the “mother”) and Norman McGhee (the “father”) were divorced in 1994. The divorce judgment provided for joint legal custody of their two minor children, with the mother having sole physical custody. In 2000, the father filed a petition to modify the trial court’s judgment as to custody, asking the-trial court to award him physical custody of the children, who were ages eight and ten at the time of the modification hearing. Following the presentation of ore tenus evidence, the trial court granted the father’s request and awarded him physical custody. The mother appeals, arguing that the trial court’s decision was so unsupported by the evidence as to be plainly and palpably wrong.
We recognize that an appellate court presumes that a trial court’s determination regarding the modification of the custody provision of a divorce judgment is correct because the trial court had the opportunity to hear the evidence and observe the witnesses and, thus, is in the best position to determine the best interests of the minor children. Voloshik v. Voloshik, 505 So.2d 1233 (Ala.Civ.App.1986). We further recognize that the trial court’s judgment based on finding of facts will not be reversed absent a showing that the findings were plainly and palpably wrong. Etheridge v. Etheridge, 712 So.2d 1089 (Ala.Civ.App.1997). The parent who petitions for a modification of a custody order has the burden of proving a material change in circumstances since the last order, proving that a change of custody will materially promote the child’s best interests, and proving that the benefits of changing custody outweigh the disruption of uprooting the child. Ex parte McLendon, 455 So.2d 863 (Ala.1984). “The evidence must be so substantial as to show an obvious and overwhelming necessity for a change.” Vick v. Vick, 688 So.2d 852, 855 (Ala.Civ.App.1997); Braswell v. Braswell, 460 So.2d 1339, 1341 (Ala.Civ.App.1984).
The trial court found that the mother did not provide a “sound environment” for the children because the mother had consistently left them in the care of various relatives. The trial court’s judgment states:
“From the totality of the evidence, it is obvious that these girls have been left to look out for themselves. They have *144 been left at various places with a variety of relatives; great-grandmother, grandmother, aunts, cousins. Children of both sexes and various ages and commingled relationships have been left virtually unsupervised to do whatever enters into their minds. This is not a sound environment in which two little girls should be reared.”
The trial court apparently based its judgment on the lack of supervision which, it believed, could possibly lead to incidents of molestation. The father had presented evidence showing that one of the daughters was allegedly sexually assaulted by one of her cousins while under the supervision of a relative. It was undisputed that the mother initiated the prosecution of the cousin and that the cousin was found not guilty in the juvenile court because of insufficient evidence.[1] The mother testified that she no longer allowed the children to be left with the cousin.
It is common in today’s society for a custodial parent to seek out others, including relatives, neighbors, day-care centers, etc., to aid the parent in watching over children. Having relatives watch over children is not a new practice, and in many instances it is the preferred method of nonparent supervision. The father knew for years that the mother left the children with relatives, yet he made no protest to the mother. Despite the father’s testimony that he objected to the mother’s leaving the children with the maternal grandmother, the father admitted that he never told the mother that he objected to her having other relatives watch the children.
We hold that the father did not present sufficient evidence to support a modification of custody based on the mother’s use of family members to help watch over the children. There is some inherent risk in leaving children under the supervision of any caregiver, be it a family member or a licensed day-care facility. A custodial parent should not be penalized because he or she uses appropriate family members to supervise his or her children.
The father also complained of the mother’s delay in having the younger daughter tested for attention deficit disorder (“A.D.D.”). The mother testified that the child’s school had just recently recommended that the child be tested for this disorder. The father presented evidence indicating that the child had been diagnosed with possible A.D.D. before the school recommended that she be tested. He admitted, however, that he knew of the earlier diagnosis and did nothing to have the child tested or to encourage the mother to have her tested. We conclude that the father’s testimony on this issue falls short of meeting his burden under McLendon.
The trial court also based its judgment on the stability of the father compared to the mother. The father had argued that he was more suited to raise the children because he believed he could provide a more stable environment than the' mother could. The stability of the parties, or the lack thereof, is a factor the trial court can consider when determining whether a change of custody is warranted. Robertson v. Robertson, 559 So.2d 64 (Ala.Civ.App.1990); Taft v. Taft, 553 So.2d 1157 (Ala.Civ.App.1989). The father argued that he was better able to provide a stable home life for the children and better supervision in terms of their education. The father, now remarried, has continued to live in the marital residence while the mother has resided in five different locations since the divorce. Although the mother moved several times immediately *145 after the divorce, the evidence showed that she had resided at her present residence for the past three years and that she has been employed at the same place for seven years. We hold that any finding by the trial court based on the fact that the mother moved several times following the divorce was not sufficient to meet the requirements set out in McLendon.
Additionally, the evidence showed that the children were performing their schoolwork adequately. The older daughter was an A/B student, and although the younger daughter did repeat the first grade, she now performs at a B/C level after being diagnosed with a learning disability. The mother presented evidence indicating that students at the children’s current school performed better on standardized tests than students at the school the children would attend if they moved into the father’s school district.
We conclude that the father did not show an obvious and overwhelming necessity for a change of custody. See Vick, 688 So.2d at 855; Braswell, 460 So.2d at 1341. We reverse the judgment of the trial court and remand the case to the trial court with instructions to render a judgment for the mother consistent with this opinion.
REVERSED AND REMANDED.
YATES, P.J., and PITTMAN, J., concur.
THOMPSON, J., concurs in the result.

. The trial judge who presided over the cousin’s juvenile trial also presided over this case.